TIMOTHY MARTIN BARRETT
108 GALAXY WAY
YORKTOWN, VIRGINIA 23693
(757) 342-1671

RECEIVED AND FILED
AT ROANOKE VIRGINIA

2006 SEP 11 A 11: 22



September 9, 2006

U.S. Bankruptcy Trustee
c/o Mr. John W. L. Craig
Clerk of Court
Western District of Virginia
United States Bankruptcy Court
210 Church Avenue SW, Room 200
Roanoke, Virginia 24011

RE: In the Matter of the Bankruptcy of Valerie Jill Rhudy Barrett
    Case Number: Unknown  06-70512

Dear Sir:

As a result of my continuing divorce litigation, I was made privy to the contents of Ms. Barrett's recent bankruptcy petition. Upon my review of it, I was shocked to discover a disparity between what she claimed she received as gifts from her family and the money her father claimed her gave her as gifts during our hearing in the Circuit Court for Grayson County, Virginia.

While she claimed during that hearing that she received a mere $100.00 or $200 a month from her father – she could not make up her mind – he said that the amount was actually between $1,200.00 and $1,500.00 per month and that he routinely forgave the amount she owned him as rent in the amount of another $400.00 per month (*i.e.*, like kind income). In fact, he admitted to giving her over $2,000.00 in the month preceding the hearing.

I enclose for you relevant portions of the transcript of that hearing so that you can judge for yourself whether Ms. Barrett has perjured herself on her bankruptcy petition, and then in no small way.

Mind you, I am making no accusation myself, but thought it would be wise to provide you with the information so that you can make the decision that best serves Ms. Barrett's creditors and the American people as a whole who count on a system of laws that is premised on the truth always carrying the day.

Sincerely,

Timothy M. Barrett
Timothy M. Barrett

Barrett v Barrett, Grayson County 03-44, 07/17/06
Hillsville, Carroll County, VA

Page 136

```
1         Court will sustain the objection.
2                         (To Mr. Barrett)   Note
3         your exception for the record.
4                 MR. BARRETT:      (To The Court)
5         Thank you, Sir.
6   BY MR. BARRETT:
7   Q.    Ms. Barrett, how much in -- on average, in
8         gifts, did you receive from your father in
9         August -- between August 16th of 2002 and
10        March 30th of 2005?
11  A.    That's just about impossible for me to
12        calculate.  You're talking about a four-year
13        time frame.  Are you talking about just cold
14        hard cash just a gift, or are you talking
15        about money he gave me to pay bills, or---
16  Q.    Let's start with cash.
17  A.    On average from 2002 forward---
18  Q.    Just to March 30th of 2005.
19  A.    He -- I would say, maybe Two Hundred Dollars
20        a month, on average, that -- that he gave
21        me for things -- to take the kids to get a
22        hamburger and, you know, just stuff like
23        that -- just money for gasoline and things
24        like that when you weren't paying child
25        support.  I'd say that's probably on average.
```

Barrett v Barrett, Grayson County 03-44, 07/17/06
Hillsville, Carroll County, VA

Page 137

```
 1   Q.   All right.
 2   A.   Especially in the past year, if you average
 3        in -- well, actually this is just 2000 --
 4        until 2005.
 5   Q.   Ms. Barrett---
 6   A.   So, up until -- I was thinking this last
 7        year where I received almost nothing.  And
 8        so, if you don't factor in this past year,
 9        maybe a hundred dollars a month through
10        March 30th of 2005.
11   Q.   All right.  I just want to make sure I
12        understand.  You say your father has not
13        given you any support since March 30th of
14        2005?
15   A.   No.  I'm saying -- if you're going to
16        average in 2006 --
17   Q.   (Interposing)  No, Ma'am.  My question---
18   A.   (Interposing)  -- and latter 2005, then the
19        average is going to go up because this is---
20   Q.   (Interposing)  He's given -- he's given you
21        more money between -- after March 30th of
22        2005?
23   A.   Yes, he's had to.
24   Q.   All right.  So from August of 2002 to March
25        30th of 2005, he's given you a hundred
```

Page 138

```
 1           dollars per month?
 2   A.      Yes.  On average, that's what I'd estimate.
 3   Q.      All right.  How about the payment of your
 4           bills?
 5   A.      Uhm---
 6   Q.      And for the record, let me make it clear
 7           I'm asking you average per month between
 8           August 16th of 2002 to March 30th of 2005.
 9   A.      Okay, money to pay bills.  Most of the bills
10           are still in his name because I live in his
11           house.  And I'm renting his house.  So, are
12           you including for giving rent or just cash
13           he gave me to pay the phone bill in his name
14           because I didn't get support?
15   Q.      Ms. Barrett, I'm asking you for the amount
16           of money that he either gave you, or gave
17           to one of your creditors, to pay your bills?
18   A.      But they're his bills.
19   Q.      Has he given you no money to pay your bills
20           at all?
21   A.      August of 2002 to March 30th of 2005,
22           average -- bills?  I'd say if you factor in
23           things like kerosene for the heater and van
24           repairs, maybe two hundred a month in bills
25           for those -- for that three-year period.
```

Page 139

```
 1    Q.    That's average per month?
 2    A.    Uh-huh (yes).
 3    Q.    Did he ever make the house payment on your
 4          behalf?
 5    A.    He makes the -- the house payment and the
 6          farm payment is all one mortgage, and I
 7          rent.  So, he always makes the house and
 8          farm payment.
 9    Q.    Fair enough.
10    A.    I'm supposed to pay Four Hundred Dollars'
11          rent per month, which he forgives every
12          month that I don't get child support.
13    Q.    How many months did he forgive it between
14          August 16th of---
15    A.    (Interposing) Well, he doesn't exactly
16          forgive it.  We keep a running total in
17          case I ever get the arrears.  And then, I'll
18          pay all the back rent that I owe.
19    Q.    So, that's a loan to you?
20    A.    I guess you'll -- I would call it a refusal
21          to throw his grandchildren in the street.
22          But if you want to call it a loan, I guess
23          you can.
24    Q.    So, you have an expectation that -- or he
25          has an expectation you are going to pay this
```

Barrett v Barrett, Grayson County 03-44, 07/17/06
Hillsville, Carroll County, VA

Page 140

```
 1        back?
 2   A.   Yes.  I have an expectation I will if I ever
 3        get any of the arrears, appeal bonds.
 4   Q.   And if you don't?
 5   A.   I have a good father.
 6   Q.   And he'll forgive you that amount?
 7   A.   Of course.
 8   Q.   All right.  And how much -- and you said
 9        Four Hundred Dollars per month in rent?
10   A.   Yes.
11   Q.   Ms. Barrett, are you running a deficit every
12        month?  Are there bills that go unpaid?
13   A.   Uhm -- not anymore.
14   Q.   Any other cash, or any other payments by
15        your dad on your behalf?
16   A.   Yes.
17   Q.   What are they?
18   A.   Well, there was -- there was the money for my
19        bankruptcy, he paid it.
20   Q.   How much was that?
21   A.   Oh, let's see.  It was One Thousand and
22        Nine Hundred Dollars, I believe is what he
23        paid for my bankruptcy.
24   Q.   When did you file bankruptcy?
25   A.   May 25th, 2006.
```

(Pages 1-148) ADM Associates (919) 755-0081

Page 141

1  Q.   Ms. Barrett, just since The Court has
2       limited its consideration of this issue from
3       August 16th of 2002 to March 30th of 2005,
4       can we just presume that any question I ask
5       you is to only cover that time frame?
6  A.   Okay.
7  Q.   Thank you. Has your father given you any
8       other cash aside from -- cash, made payments
9       to creditors, forgiven debts, paid anything
10      to anybody on your behalf during that time
11      frame?
12 A.   Oh, yes. Legal -- legal bills.
13 Q.   What has he paid in legal bills?
14 A.   Oh, man. I guess he paid -- oh, heaven
15      knows. I can't even begin to tell you how
16      much he paid for the divorce. I have no
17      idea. It was more than Two Thousand
18      Dollars, I know that.
19 Q.   Wasn't it Ten Thousand Dollars that he paid
20      to Ms. Karnes?
21 A.   At least, I'm sure.
22 Q.   At least Ten Thousand Dollars.
23 A.   I'm sure it was.
24 Q.   Was it at least Fifteen Thousand Dollars?
25 A.   I don't know. I'm not sure. It was a lot.

```
 1   Q.   How about your other creditors?
 2   A.   Uhm, let me see.  I can't remember any other
 3        creditors he paid.
 4   Q.   Well, you indicated earlier that there were
 5        a lot, Ms. Barrett.
 6   A.   Well, we were always hoping to get the
 7        appeal bond so that I could pay my creditors
 8        and hoping that child support would start
 9        coming regularly so I could begin putting my
10        creditors on a payment schedule, so we just
11        waited.
12   Q.   Well, Ms. Barrett, what I'm asking you is,
13        you went from a lot of creditors to one
14        creditor.  Are you sure you're not missing
15        any creditors that this Court should be
16        aware of?
17   A.   That my father's paid?
18   Q.   Yes, Ma'am.
19   A.   I can't think of any that he's paid other
20        than -- than my divorce attorney.
21   Q.   Ms. Barrett, prior to going to Radford
22        University -- well what job did you have
23        while at Radford University?
24   A.   I told you, graduate teaching fellow and
25        graduate research assistant.
```

Barrett v Barrett, Grayson County 03-44
Carroll County, Hillsville, VA, 07/18/06

Page 49

```
1          Anything else, folks?
2              MS. CANGIN:      (To The Court)   Not
3          from this witness; subject to recall.
4              THE COURT:       (To All Parties)
5          Both -- both parties subject to recall.
6                               (To The Witness)
7          Ma'am, have a seat, if you will, please?
8              (THE WITNESS WAS DISMISSED.)
9              THE COURT:       (To Mr. Barrett)
10         Mr. Barrett, call your next witness, please.
11             MR. BARRETT:     (To The Court)
12         Gary Rhudy, please.
13         (WHEREUPON,
14                      GARY RHUDY
15         WAS CALLED AS A WITNESS, DULY SWORN, AND
16         TESTIFIED AS FOLLOWS:)
17         DIRECT EXAMINATION BY MR. BARRETT:
18         Q.   Mr. Rhudy, at any time after---
19             THE COURT:       (To All Parties)
20         Let's get his name for the record, folks,
21         please.
22             MR. BARRETT:     (To The Court)   Oh,
23         I'm sorry.
24         BY MR. BARRETT:
25         Q.   Mr. Rhudy, would you please state your name
```

```
1              for the record?
2     A.       Gary Blake Rhudy.
3     Q.       What is your address, Sir?
4     A.       8886 Spring Valley Road, Fries, Virginia.
5     Q.       What is your relationship to Ms. Barrett?
6     A.       She's my daughter.
7     Q.       Mr. Rhudy, did you have an opportunity to
8              discuss Ms. Barrett's testimony or your
9              testimony anytime after four o'clock
10             yesterday afternoon?
11    A.       We didn't discuss her testimony.  I hadn't
12             testimonied [sic] yet.
13    Q.       Did you discuss anything pertaining to what
14             you would say during your testimony with Ms.
15             Barrett?
16    A.       No, Sir.  I've got it written down right
17             here.
18    Q.       Did you discuss anything you would say
19             regarding your testimony with Ms. Cangin?
20    A.       No, Sir.
21    Q.       How did you happen to come up with what you
22             wrote down there, Sir?
23    A.       I just wrote down my expenses.
24    Q.       Mr. Rhudy, are you in possession of any loan
25             documents or promissory notes that indicate a
```

```
1              creditor or debtor relationship between you
2              and Ms. Barrett?
3     A.       No, Sir.
4     Q.       Ms. Barrett recently filed bankruptcy; is
5              that correct?
6     A.       Yes.
7                   MS. CANGIN:      (To The Court)
8              Your Honor, I'm going to object to this on
9              relevance.  We're only talking about the
10             time period from August 16th, 2002 to March
11             30th, 2005.  Unless she declared bankruptcy
12             during that time, it's not relevant.
13                  MR. BARRETT:      (To The Court)  My
14             next question will make it relevant, Your
15             Honor.  I will beg The Court's indulgence
16             for one question.
17                  THE COURT:      (To Mr. Barrett)
18             I'll indulge you for one question.
19    BY MR. BARRETT:
20    Q.       Mr. Rhudy, did Ms. Barrett list you as a
21             creditor in her bankruptcy?
22    A.       I don't know.  How would I know?
23    Q.       Mr. Rhudy, have you assisted your daughter
24             financially between August 22nd -- excuse me
25             -- August 16th of 2005 and March 30th of --
```

Page 52

```
 1              let me start over.  Strike that question.
 2              Have you assisted your daughter financially
 3              between August 16th of 2002 and March 30th
 4              of 2005?
 5   A.         Yes, Sir.
 6   Q.         Would you describe the nature of your --
 7              well, did you give her money directly?  Did
 8              you give her cash directly?
 9   A.         Yes, Sir.
10   Q.         During that time period, how much, on
11              average, per month would you say that you
12              gave her?
13   A.         Anywhere from Twelve to Fifteen Hundred
14              Dollars.
15   Q.         Did you pay any of her bills?
16   A.         Of course.
17   Q.         And how much of her bills did you pay?
18   A.         I paid all of them that she didn't have the
19              money to pay.
20   Q.         On average, how much of her bills would you
21              pay?
22   A.         I said Twelve to Fifteen Hundred Dollars a
23              month.
24   Q.         I'm sorry, my apology, Sir.  That was
25              inclusive of all the money that you gave her
```

```
 1            either to her directly, or to her creditors?
 2    A.      Well, the bills are in my name.
 3    Q.      I see.  For services that she uses; is that
 4            correct?
 5    A.      The telephone, the TV, the American Electric
 6            Power, Sprint, the insurance.
 7    Q.      At the house she's staying at?
 8    A.      Yes, Sir.
 9                 MR. BARRETT:     (To The Court)
10            That's all the questions I have, Your Honor.
11            Thank you.
12                 THE COURT:      (To Ms. Cangin)
13            Ms. Cangin, do you have any questions?
14    CROSS EXAMINATION BY MS. CANGIN:
15    Q.      Mr. Rhudy, has Ms. Barrett indicated that
16            she intends to pay you back for any of the
17            money that you've given her?
18    A.      All the money that she gets when she gets
19            money, she tries to give me what she can of
20            it.
21    Q.      So, she's already paid some of it back?
22    A.      Well, she gives me some.  But usually by the
23            end of the month, we have to -- the children
24            take a lot of money.
25    Q.      But she stated that she does intend to pay
```

```
 1            you back?
 2     A.     If she has the money.
 3     Q.     And the Three Hundred to Fifteen Hundred
 4            Dollars includes the -- that you said you
 5            pay per month, includes the expenses that
 6            are in your name at the house where she
 7            lives?
 8     A.     It doesn't include the rent.
 9     Q.     It doesn't include the rent.
10     A.     It does not.
11     Q.     All the utilities?
12     A.     The utilities, the -- the payments that I
13            make, I wrote down what we paid last month
14            for her and her children.  It was
15            Twenty-Four Hundred and Twenty-One Dollars
16            and seventy-nine cents.  But that was
17            including camp, the basketball camp, the
18            Camp Dickinson, the -- I can't read my own
19            writing.  But it did not cover the rent,
20            nor taxes on the house, or the insurance.
21            But they are my grandchildren and my
22            daughter, so I'll spend whatever.
23     Q.     So, paying for camp for your grandchildren
24            was a gift to your grandchildren, not to
25            your daughter; correct?
```

Barrett v Barrett, Grayson County 03-44
Carroll County, Hillsville, VA, 07/18/06

Page 55

| | | |
|---|---|---|
| 1 | A. | Oh, yes. And the basketball camp was -- and |
| 2 | | my wife, we have separate accounts, but she |
| 3 | | paid for that. And she wrote down what she |
| 4 | | paid. |
| 5 | Q. | And was that for all five children or--- |
| 6 | A. | Just two of them went to basketball camp. |
| 7 | Q. | Okay. So the Three Hundred to Fifteen |
| 8 | | Hundred Dollars also includes gifts--- |
| 9 | A. | From Twelve to Fifteen Hundred Dollars. |
| 10 | Q. | I'm sorry, Twelve to Fifteen Hundred. |
| 11 | A. | Right. |
| 12 | Q. | And that also includes gifts to the children |
| 13 | | and not to Ms. Barrett? |
| 14 | A. | Oh, yes. Their haircuts and that kind of |
| 15 | | stuff, I try to take care of all that. And |
| 16 | | the band -- the band -- the band, she paid |
| 17 | | part of it and I paid part of the -- |
| 18 | Q. | Fees. |
| 19 | A. | -- no, they went on a trip. |
| 20 | Q. | Okay. |
| 21 | A. | What do you call that? Band trip, I'm sorry. |
| 22 | Q. | That's okay. |
| 23 | A. | I just couldn't think -- couldn't think. |
| 24 | | They went to Atlanta and I helped with that. |
| 25 | | But they're my grandchildren. I do whatever. |

Page 56

```
 1  Q.     No further questions.
 2              THE COURT:        (To Ms. J Barrett)
 3         Ms. Barrett, any questions for this
 4         gentleman?
 5              MS. J BARRETT:    (To The Court)  No.
 6              THE COURT:        (To All Parties)
 7         You plan on recalling The Witness, folks?
 8              MR. BARRETT:      (To The Court)  One
 9         -- one last question.
10  REDIRECT EXAMINATION BY MR. BARRETT:
11  Q.     The Twelve to Fifteen Hundred Dollars per
12         month, you're saying that does not include
13         the rent?
14  A.     No.
15  Q.     And the rent is Four Hundred Dollars a month?
16  A.     I just drew a figure out of the air.  I
17         just asked someone what they thought a three
18         -- a five-bedroom -- a four-bedroom house
19         with three baths, and what the rent would
20         be.  I don't know.  I've never assessed it.
21  Q.     Is that -- is that the Four Hundred Dollars
22         that -- that what you came up with after
23         discussing the matter with your friends?
24  A.     (Interposing)  Real estate man.
25  Q.     Real estate man.  Was that Four Hundred
```

Barrett v Barrett, Grayson County 03-44
Carroll County, Hillsville, VA, 07/18/06

Page 57

```
1            Dollars?
2    A.      Yeah.
3    Q.      I'm sorry, Sir, yes?
4    A.      Yes, Sir.
5    Q.      Okay.  Thank you.  No further questions.
6    EXAMINATION BY THE COURT:
7    Q.      Let me get this clear.  You think you
8            probably provide to your daughter around
9            Twelve Hundred to Fifteen Hundred Dollars --
10           your daughter and the kids -- per month
11           either in-kind or cash benefits?
12   A.      Yes, sir.
13   Q.      And that does not include the rent, the
14           insurance, or the taxes on the house?
15   A.      Yes, Sir.  And I didn't write that down.  I
16           should -- maybe I should have, but I didn't.
17   Q.      Okay.  So I'm clear, that -- that Twelve to
18           Fifteen Hundred Dollars for your -- for your
19           daughter and the kids, you give them
20           in-kind, which would include many things,
21           plus -- but you didn't add into that figure
22           the Four Hundred Dollars for the rent, or
23           the taxes, or the insurance on the house?
24   A.      And I maintain the house.
25   Q.      Okay.
```

Barrett v Barrett, Grayson County 03-44
Carroll County, Hillsville, VA, 07/18/06

Page 58

```
 1    A.        And mow the yard and take care of all that.
 2              THE COURT:      (To Mr. Barrett)
 3    Anything else for this gentleman?
 4              MR. BARRETT:    (To The Court)  No,
 5    Sir.
 6              MS. CANGIN:     (To The Court)  No,
 7    Sir.
 8              THE COURT:      (To All Parties)
 9    Plan on recalling him, folks?
10              MR. BARRETT:    (To The Court)  No,
11    Sir.
12              MS. CANGIN:     (To The Court)  No,
13    Sir.
14              THE COURT:      (To The Witness)
15    Thank you for being here, Sir.  You're free
16    to go.
17              THE WITNESS:    (To The Court)
18    Thank you, Sir.
19                  (THE WITNESS WAS DISMISSED.)
20              THE COURT:      (To All Parties)
21    Just one second, please?
22              MR. BARRETT:    (To The Court)
23    While you're taking that second, may I step
24    out and see if my next witness is here, Your
25    Honor?
```